The next case this morning is 5 22 0 1 2 4 people versus Alvin Smallwood arguing for the defendant. Appellant is Marion Searing, arguing for the state. Appalachia is Victoria Joseph. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please know the clerk is permitted to record these proceedings. Good morning, Council. Good morning, Your Honors. Good morning, Your Honors. Participants, if I'm looking correctly, is still trying to connect to the audio. So I'm gonna give it just a couple few seconds, see if we can get that done before we get started. I'll say, uh, I apologize, uh, for a delay. We had two civil cases that took a little longer than expected this morning. So we appreciate your patience. They're connected. Just be. Thank you. Uh, Miss Eric, are you ready to proceed? I am. Then go right ahead. All right. Thank you. May I please support? My name is Miriam Siric. I'm from the office of the state appellate defender, and I'm here on behalf of Mr Smallwood. Your Honors, we raised five issues in our brief, but given the time constraints, I'd like to concentrate on the first issue. Trial counsel's raised the defense of dwell dwelling, even though Mr Smallwood was on trial for defending himself at home and was surrounded by a mob trying to get into his home. I'm permitting. I would like to touch on the fourth issue, whether the armed violence statute permits permits more than one conviction. But that's really just if we get to it. An attorney has an obligation to present a legal defense that is available to his clients. One of the defenses that we have in Illinois is the defense of home, which provides that a person has a greater right to defend himself when he is at home than elsewhere. Specifically, what sets the defense apart from self defense is that the defendant does not have to show that he believed his life was in danger when he was attacked in his own home, or that he anticipated great bodily harm before he is allowed to defend himself with deadly force. When attacked in his own home, the defendant must show that he feared an assault. Mr Smallwood's case is a textbook case to raise the defense of home. First of all, we know he defended himself in his own home. Second, to qualify for the defense under that first subsection, the defendant must show that he was defending himself against someone trying, and I'm quoting from the statute here, to enter in the home in a violent, riotous, or tumultuous manner. And I want to focus in on the word tumultuous. The definition of a tumult, according to the Oxford Dictionary, is a loud, confused noise, especially one caused by a large group of people. So the evidence here was there were nine people uninvited on Mr. Smallwood's property, and the people were screaming outside so much that people could hear them across the alley inside a store through double doors. They were banging on Mr. Smallwood's home on the door. They were telling him with expletives to come outside. They were telling him that he could run but not hide. And critically, and contrary to what the state claims, they were also trying to get in. The state's own evidence shows that Mazari Allad was trying to first get in through the side door and then through the garage door. This is evidence of the attempt of a tumultuous entry. The second part of the defense of home requires that a defendant must have a reasonable belief that he would be assaulted in his own home. And Mr. Smallwood certainly had a reasonable belief that he would be assaulted here. There were nine people outside. He was outnumbered nine to one. They were telling him he couldn't hide, which is what he was trying to do. And that was just a thinly veiled threat. They were trying to come in. And then in addition, he had been told by his girlfriend that people were coming to kill him. He had been told by his girlfriend's sister that people were coming to get him. And another indication that his fear was reasonable was that his mother, who had also been in the house and who had been told the same thing, had actually left the house and was running. So all of these facts combined just show that this would have been a perfect case to raise defense of dwelling. But that is not what Mr. Smallwood's attorney did. He didn't put it in his discovery answer. He didn't argue it to the jury. And he didn't even use it when the jury itself asked, isn't there a defense here for a property that would be relevant? So significantly, it is that the jurors actually were the ones who took regards. It's important because it shows that very reasonable, just normal people believe that there was a special right here at stake because he was at home. And the other part is that he was prejudiced, because the jury question shows that the jurors were wrangling with his, with the special rules that applied, or the special frame of mind that he could be in in his own home. And the jurors question undermines confidence in the outcome here. I want to address quickly, a few of the state's arguments here. The state argues that not using the defense of dwelling was trial strategy. But the state does not give us a single reason of what that strategy could have been. Importantly, to be able to raise this strategy, the defense only needed slight evidence. And there can be no doubt that there was slight evidence here that would have supported this defense. In addition, the attorney also raised self defense, but self defense, first of all, that's a higher burden. And if that was a strategy, that would have been fine. But raising defense of dwelling and self defense are not mutually exclusive defenses. So he could have raised both of those. The state also throws out a whole number of things that Mr. Smallwood could have done, like trying to negotiate with the people outside, going to bed while people were trying to break into his house, retreat further. And the state even says he didn't even allow them to open the garage door. Well, first of all, the evidence here clearly shows that he was first in his home and then retreated actually into his garage. So he was trying to get away from the people he saw then people were outside. So he went into the garage, he had his his lights off. And then while he was in the garage, he saw fingers under the garage door and saw that people were trying to lift up the garage door. And that is when he shot. Importantly, contrary again to what the state argues here, he did not have to wait until the garage door opened. Illinois does not require anyone to wait until people break into the sanctity of their home before they may use deadly force. So in some counsel was ineffective for failing to raise the appropriate defense here the defense of dwelling and we are respectfully asking that you send this case back for a new trial where Mr. Smallwood can raise the defense and then have the jury decide whether he was justified in using a gun to defend himself in his own home. Do you have questions about this part of my argument? I do not at this time, just as Kate or just as McCain, I do not. Okay, so you wanted to touch on I think you said the fourth issue. Yes, I wanted to touch on the fourth issue. So this is whether under the circumstances here more than one conviction of armed violence is proper. This is not as the state tries to frame it a one act one crime argument. But it is an issue that precedes that analysis, the question of the allowable unit of prosecution. That analysis boils down to how many convictions and sentences a person can receive for one course of conduct. And to determine that we look at the text of the statute to see whether there is any indication from the legislature that multiple convictions would be proper here. Mr. Smallwood was convicted on of two counts of armed violence based on felony reckless conduct for a single course of conduct, which is when he took his gun with a single objective to get the mob outside to leave. The first district has looked at the legislature's intent for the armed violence statute, and has found that the statute is ambiguous regarding the unit of prosecution. And when the unit of prosecution is ambiguous, then the rule of lenity requires that only one conviction be entered for one course of conduct. So where there is Hold on. So yeah, I guess what the court there said is that this that the statues language any felony that is that is the the part of the statute. And we don't and that is exactly the same here we did that is the same analysis. So we would ask that you vacate one of the two convictions for on violence because only one conviction for on violence is proper. And I believe Council you side if I'm looking here, that the people versus white cases, the first district, then there's also the Hartfield case from the Supreme Court. So the Hartfield case, the Supreme Court case in the Hartfield case is the case that sets out the general analysis for for unit of prosecution cases. But the white case actually analyzes the unit of prosecution for armed violence and comes to the conclusion that it is ambiguous about the unit of prosecution. Thank you. Okay, that those were my remarks. But if you have no questions, then I'll just reserve the rest of my of my remarks for rebuttal. Just as case or just as McKinney, do you have any questions at this time? No, sir. All right. Thank you. Thank you, Council. And obviously, like you said, you'll have your time for rebuttal. Miss Joseph, go right ahead. Good morning, your honors. May it please the court and counsel. The people will also begin with the defensive dwelling argument and maintain that this was not an abuse of discretion of the trial court to answer the jury's question. We have a question about the law as it relates to right to defend property. What does the law say about one's right to defend one's property? With the response, you have all the law you are to consider in this case. The court's response was not as defendant claimed in their brief and instruction that there was no law on defensive dwelling of property. It's just that this was not an appropriate instruction to be given at this point in time. Let me ask you this. Given the jury with that question, hey, judge, what about the right to defend someone's property? How is it trial strategy for the defense attorney not to request that very instruction? Well, it may not be good trial strategy, your honor. It does not meet the prejudice prong of ineffective assistance of counsel. How does it not meet prejudice if the jury's telling the judge? Because of the rule, the defense itself would not have been available to the jury. Are you saying that the defensive dwelling would not have been appropriate to give? Under the facts of this case, where the defendant used deadly force, there were additional requirements that needed to be met, which were not met. The evidence did not even slightly show them. The jury does not get to assert an affirmative defense on behalf of the defendant. And the court cannot stop deliberations to reopen proofs in the middle of the jury making deliberations. That's one of the main requirements that the jury instruction should be settled before closing arguments. Because in this case, especially where once an affirmative defense is raised, and the people then have to prove both the elements of the underlying offense and disprove the elements of the affirmative defense, you're not able to go back and do that. And to assert that the people were put on notice of a defensive dwelling defense and defendant's opening statement that he could protect himself and his property. As your honors know, defensive dwelling and defensive property are two different affirmative defenses. Therefore, to say that they were on to disprove the argument, as the Bardsley case showed, basically, you're expecting the people to disprove an affirmative defense anytime there may be evidence in the case or every single defense. And that is not what needs to be done. That is why you assert them in the beginning. Well, let me stop you there, counsel. I don't disagree with that premise that you can't stop the trial while the jury is deliberating and go back. But does that not go to Justice McHaney's question? Why wasn't this defense brought up? You know, during the discovery process that would have put the state on notice? How does that not prejudice the defendant? Unfortunately, I can't answer the why as to why defense counsel chose what they did. That's for us to decide. Yes. As far as the prejudice, when you use deadly force, the victim's entry must be violent, riotous, or tumultuous. And there's a subjective belief that deadly force is necessary to prevent an assault upon or an offer of personal violence on the defendant or another in a dwelling. And that must be reasonable. Or that the defendant reasonably believes that such force is necessary to prevent the commission of a felony in the dwelling. Under either approach, there needs to be some force or threat of force against the defendant or the dwelling. And where there is none, the defense should fail. Let me stop you there. How could a group of nine people acting in the manner that the state's testimony set it out, how could that not be deemed riotous, violent, tumultuous? Because, Your Honor, the defendant himself testified he only saw two to three people that were present. We know that the first group of people that arrived outside his home were either people he knew or were related to his girlfriend. These were the people that identified as making the noise. That the defendant should or could have known the voices of the people that he knew. The group of Harris's family did not arrive, I believe, until five minutes before the shooting began. And there was no evidence that they participated in any of the yelling. The yelling, even Green, who was associated with both the defendant and the people there, described this as the usual. You had two unbiased witnesses who said, this is the sound, normal noise that they hear all of the time. There was no actual, you know, forceful entry here that someone tried a door or put their fingers underneath and couldn't lift anything. We do have cases in the past where even entering a home unlawfully, in and of itself, is not a violent, tumultuous, or riotous entry. You need something more than just the unlawful entry that was taking place here. The only two statements the defendant identified was, get your goofy ass out here, and you can run but you can't hide. There is no evidence that there was a threat of violence specifically against the defendant or that they were going to commit a home invasion, which was the only felony the defendant identified as under the second prong of defensive dwelling. But if the defense attorney would have properly brought forth or at least alleged this defense, all of this information could go to the jury, and the jury as the fact finder could make that determination, correct? And the jury as the fact finder did have self-defense, which included the reasonable use of force. They did weigh the reasonableness of the defendant's actions. Here they weighed whether the call from the girl or the girlfriend's statement and her sister's statement were actually reasonable. This was a self-defense. These same issues were considered by the jury as the other reason why there is a failure to show prejudice in this case. There was no evidence to believe, even by the defendant's own testimony, that the people outside his home would or had the ability to come into his house. Ms. Joseph, the law says that you must only fear an assault, not a battery. How do you define the word assault? I mean, once we give the word assault, well, you need, again, the people maintain there was neither the riotous entry, which is needed in combination with the offer of an assault. And again, the people do not maintain that there was any such offer of violence against the defendant. Well, isn't an assault a threatened danger, whether real or apparent? I mean, we're not talking a battery. We're not talking a home invasion. We're talking the word assault. Is a reasonable apprehension of receiving a battery? A reasonable apprehension. It doesn't even have to be real, does it? No. And under most facts, no, Your Honor. I mean, there do need to be some circumstances, obviously, to support an assault charge, but yes. Right. So going back to what questions you've been asked, especially I'm concerned about the jury question, which the court didn't answer. Isn't a court when faced with a jury note that asks a question of law, not fact, a question of law supposed to answer that question? I pulled the transcript. It says the note says we have a question about the law as it relates to the right to defend property. What does the law say about one's right to defend one's property? Are you saying that this is a different jury instruction that they already had? No, Your Honor. What I'm saying is that this would be a circumstance where it was appropriate not to answer the question. In general, the people do not dispute that questions of law should be answered under the unique situation where you are mid-deliberation, essentially asking for an instruction on something that you have not given both sides equal opportunity to address in either evidence or argument. It would not render the adversarial system of criminal justice in partisan advocacy. And therefore, this decision not to answer this question in this case was not an abuse of discretion. Okay. Thank you. Ms. Joseph, I know we peppered you with questions. I'm going to give you a short moment, if you would, to address the defendant's argument for. I don't want you not to have that opportunity. For the unit of prosecution. Yes, Your Honor. The unit has been defined as an act or a course of conduct that the legislature has prohibited for the purposes of a single conviction and sentence. The courts have routinely held that statutes that not expressly state whether they are allowing separate offenses to be charged for simultaneous acts that the doctrine of lenity applies due to the ambiguity. However, lenity is not to be rigidly applied. And the biggest problem with white is that in looking at the legislative intent, you do not want to undermine the goal of the armed violence statute, which is to deter using a weapon during the commission of felonies, and to discourage gun violence and multiple gunshots. Here we had the commission of multiple distinct felonies, where several shots were fired at multiple people, and that should constitute multiple acts and offenses. The statute further explicitly imposes harsher penalties when adding the elements of personal discharge and great statute. The people maintain that both convictions should enter here. If Your Honors do not agree, then the remedy is to vacate one of the armed violence convictions and remand for sentencing on the prodigate felony of reckless conduct. Are there any other questions Your Honors have this morning? None, thank you. Justice McHaney? No, thank you. Thank you, Your Honors. Thank you, Well, just really briefly, I do want to say that the idea that there was no evidence that would have supported this defense really is just not true. And I've gone over the evidence here. And I want to say that the standard for the defense attorney in order to be able to use this defense was slight evidence. He only needed slight evidence of defense of dwelling to bring this defense. And certainly there was slight evidence, but we've really belabored the evidence already here. Certainly nine people outside of my house, screaming, yelling, and turning doorknobs would put me in apprehension of an assault. The other part, if I understand the state's argument correctly, is that I think the way that they put it in their brief is that the self-defense and the defense of dwelling defense are so intertwined, they're essentially the same. So it doesn't matter that defense of dwelling was not raised. But of course, as I pointed out before, there is a higher burden on the defendant for what he has to show, what kind of force he could use if he's not at his own compared to when he's in his own. And then again, these are not mutually exclusive defenses. He could have raised them both. And one more point to make, we know that the jury was struggling with Mr. Smallwood's frame of mind because they acquitted him of the aggravated battery charges, meaning they found that he didn't have intent. They found him only guilty of the reckless conduct charges. So we know they were right there. They were wondering what is going on in his head. So that is about the argument in their brief too, that somehow reducing this to only one conviction under the armed violence statute is we're not undermining the goal of the legislature here. Mr. Smallwood was charged with reckless conduct and felony reckless conduct for which he could have received one to three years in prison. As he was charged under the armed violence, violent statute, that went up to a sentence between 20 and 40 years. Well, it should have been 40 years. It went up to 45 years. So in as much as the legislature here intended to punish somebody more because there had that ability, it's 13 times higher than it could have otherwise been if it had just been charged as felony reckless conduct. So those were my points. If you have any further questions, I'm still here. Otherwise, I just submit the case for a decision. Justice McKinney or Justice Cage, do you have any final questions? No. Thank you. Well, counsel, thank you so much. We obviously will take the matter under advisement. We will issue an order in due course. I believe that finishes our oral arguments for this morning, and the court will stand in recess until tomorrow morning at nine o'clock. Counsel, we hope you have a great day.